UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LUCAS A. NIEDBALSKI,

        Plaintiff,

        v.                               CAUSE NO. 3:25-CV-130-PPS-AZ

LAPORTE COUNTY SHERIFF
DEPARTMENT, *et al.*,

        Defendants.

## OPINION AND ORDER

Lucas A. Niedbalski, a prisoner without a lawyer, filed an amended complaint. [ECF 22.] "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Niedbalski alleges that he suffers from a seizure disorder and, during a prior term of incarceration at the LaPorte County Jail, he was provided with medication for his seizures and a pass to have a bottom bunk bed. He returned to the jail on December

23, 2023. A nurse employed by Quality Correctional Care[1] saw him on December 24, 2023, but she allegedly declined to prescribe Niedbalski medication for seizures that he previously took while incarcerated because he had not been taking the medication prior to his incarceration; he had instead been "self-medicating" with an unidentified substance.

In January 2024, Officer Joseph Maxsyan moved Niedbalski to a different cell block, and a bottom bunk was not available. Niedbalski told the pod officer that he suffers from seizures and needed a bottom bunk, but the pod officer told him that if he refused his assignment he would go to the hole.[2] Niedbalski stayed in the unit, using a top bunk, but on February 2, 2024, he had a seizure while coming down from his bunk, fell, and broke his wrist.

Niedbalski was taken to the hospital and his wrist was placed in a splint. When he returned to the jail, he was housed in the medical unit for a week. He was provided with an air cast. Niedbalski believed that surgery was needed, and he filed a complaint regarding the care he received for his wrist.

When Niedbalski left the medical block, Joseph Maxsyan moved him to a room where he was housed alone. The room was dirty. Niedbalski filed a claim of some sort – he does not identify the claim – and Maxsyan learned about it. Maxsyan took Niedbalski to a room with two other inmates and no bottom bunks. Niedbalski believes

---

[1] I can not determine from the complaint if this nurse is Nurse Cheryle Strahle or some other nurse because Niedbalski does not identify the nurse he is referring to in the body of his complaint.

[2] Niedbalski has not named the pod officer as a defendant in this case.

that, when Maxsyan moved him to this room, Maxsyan was retaliating against Niedbalski because of the claim. Niedbalski refused the housing assignment because his wrist was broken and because of his seizures. Maxsyan then took Niedbalski to another room that was also dirty. Niedbalski believes that this too was an act of retaliation, and he again refused his housing assignment. Niedbalski was returned to the medical block.

Once back in the medical block, a nurse[3] from Quality Correctional Care told Niedbalski that his bottom bunk pass was not in the system. A different nurse[4] told Niedbalski that someone had removed the bunk pass from the system.

Niedbalski filed grievances regarding the care he received for his wrist and seizures. These grievances were appealed to Sheriff Ron Heeg, although each response he got was from a member of the medical staff.

Once Niedbalski was transferred to another facility, he was seen by a specialist and surgery was performed on his wrist. His complaint seeks monetary damages from Officer Joseph Maxsyan, Nurse Cheryle Strahle, Sheriff Ron Heeg, LaPorte County Sheriff's Department, and Quality Correction Health Care.

*Allegations Against Officer Joseph Maxsyan*

Niedbalski is suing Officer Joseph Maxsyan for placing him in a cell without a bottom bunk and a dirty cell after he filed a claim of some kind. "To prevail on his First Amendment retaliation claim, [Niedbalski] must show that (1) he engaged in activity

---

[3] Niedbalski does not provide the name of the nurse that provided this information.

[4] Again, Niedbalski does not provide the name of this nurse.

protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendant['s] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here, Niedbalski indicates he complained in some way, but it is not clear when he complained, who he complained to, or what he said in that complaint. Without this type of detail, it is difficult to determine whether Niedbalski engaged in activity protected by the First Amendment. What's more, it is not plausible to infer that his complaint—in whatever form it took—was a motivating factor in the decision to place Niedbalski in a room without a bottom bunk or a dirty room. This is especially so where Maxsyan had previously placed him in a different dirty room.

Furthermore, when determining whether an action is sufficiently adverse, courts consider "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). "This is an objective standard; it does not hinge on the personal experience of the plaintiff." *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020). "[T]he harsh realities of a prison environment affect our consideration of what actions are sufficiently adverse. 'Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse.'" *Id.* at 880-81 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). "It would trivialize the First Amendment to hold that harassment for

4

exercising the right of free speech was always actionable no matter how unlikely

to deter a person of ordinary firmness from that exercise." *Bart v. Telford,* 677 F.2d 622,

625 (7th Cir. 1982). Placing Niedbalski in a room without a bottom bunk when he had

no order on file requiring that he have a bottom bunk would not deter a person of

ordinary firmness from engaging in future First Amendment activity. Likewise, without

additional details regarding the condition of the cell, it is unclear that placing

Niedbalski in the dirty cell could deter a person of ordinary firmness from engaging in

future First Amendment activity. And, ultimately, Niedbalski ended up in the medical

department, a result which would *encourage* a person of ordinary firmness to complain.

Therefore, these allegations do not state a claim.

   *Allegations Against Nurse Cheryle Strahle*

   Niedbalski has named Nurse Cheryle Strahle as a defendant, but he does not

mention her name in the complaint. He mentions interactions with several different

nurses without providing names, so it is unclear which conduct in the complaint, if any,

is attributed to Nurse Strahle. "[P]ublic employees are responsible for their own

misdeeds but not for anyone else's." *Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009).

If Nurse Strahle is the nurse responsible for denying him seizure medication or a

bottom bunk pass, then he may be able to allege facts that state a claim against her for

deliberate indifference. Similarly, if Nurse Strahle denied him medical care following

his return from the hospital, he may be able to state a claim against her for deliberate

indifference. But because the complaint does not provide any specific allegations about

*how* Nurse Strahle allegedly wronged Niedbalski, I cannot allow him to proceed against her, at least not at this point.

> *Allegations Against Sheriff Ron Heeg*

Niedbalski is suing Sheriff Ron Heeg, but his only allegations against him is that he appealed a denial of a grievance, that appeal should have reached Sheriff Heeg, and Sheriff Heeg didn't respond. It is unclear if Sheriff Heeg even saw the grievance, but even if he had, it cannot be plausibly inferred that Sheriff Heeg was deliberately indifferent to Nedbalek's needs. Therefore, I cannot permit Niedbalski to proceed against Sheriff Heeg.

> *Allegations Against LaPorte County Sheriff's Department and Quality Correctional Health Care, LLC*

Finally, Niedbalski has sued LaPorte County Sheriff's Department and Quality Correctional Health Care ("QCC"), the private company that provided health care services to LaPorte County Jail inmates. It is possible to sue a municipal entity such as a sheriff's department based on a policy, practice, or custom pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Likewise, a private company performing a State function can be held liable to the same extent as a municipal entity under *Monell. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But a corporation "cannot be held liable under § 1983 on a *respondeat superior* theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citation omitted). Rather, corporate liability exists only "when execution of a [corporation's] policy or custom . . .

inflicts the injury." *Id.* (citation omitted). Niedbalski has not identified any policy *that led to a violation of his constitutional rights*, and I therefore cannot permit Niedbalski to proceed against the LaPorte County Sheriff's Department or QCC.

The amended complaint does not state a claim for which relief can be granted. If Niedbalski believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

Niedbalski likely has some claim against someone relating to the failure to place him on anti-seizure medications and failing to assign him a bottom bunk. If he chooses to file an amended complaint, he does not need to use legal phrases, cite to legal authority, or provide legal analysis; he simply needs to explain in his own words what happened, when it happened, where it happened, who was involved, and how he was personally injured, providing details about what occurred but avoiding legal phrases and citations. Furthermore, to enable me to follow along with the story, he should use each defendant's name every time he references them in the amended complaint. If he does not know the name of a defendant he wants to sue, he should list them as a "John

Doe" or "Jane Doe" defendant and provide whatever identifying details he can about the defendant, in addition to describing why he is suing the unknown individual.

For these reasons, the court:

(1) GRANTS Lucas A. Niedbalski until **June 30, 2025**, to file an amended complaint; and

(2) CAUTIONS Lucas A. Niedbalski that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on May 28, 2025.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT